Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ruben Castillo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 7420 | **DATE** | 4/26/2002 |
| **CASE TITLE** | USA ex rel. Jimmy Lee Snyder vs. Jerry L. Sternes, Warden | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Jimmy Lee Snyder's petition for a writ of habeas corpus is denied. Judgment is entered in favor of Respondent Sternes and against Petitioner Snyder. This case is hereby dismissed.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | APR 29 2002 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 12 |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | | | date mailed notice | |
| RO | courtroom deputy's initials | | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **United States of America** *ex rel.* **JIMMY LEE SNYDER,** | ) ) ) ) ) |
| Petitioner, | ) ) |
| v. | ) No. 01 C 7420 ) ) Judge Ruben Castillo |
| **JERRY L. STERNES, Warden, Dixon Correctional Center,** | ) ) ) ) |
| Respondent. | ) ) |

DOCKETED
APR 2 9 2002

## MEMORANDUM OPINION AND ORDER

Jimmy Lee Snyder petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Following a bench trial, Snyder was convicted of attempted first degree murder and several counts of unlawful use of a weapon by a felon and was sentenced to concurrent terms of seventeen and five years. Snyder claims that he is entitled to habeas corpus relief because: (1) his Sixth Amendment rights were violated when he stood trial while unfit due to his ingestion of psychotropic medications; and (2) he was denied his Sixth Amendment right to effective assistance of counsel where counsel knew that Snyder was medicated, was told by Snyder that he could not understand what was happening in court and counsel failed to request a fitness hearing or advise the court of his mental status. For the reasons stated below, we deny Snyder's habeas corpus petition. (R. 1-1.)

### RELEVANT FACTS

When considering a habeas corpus petition, the Court presumes that the factual determinations of the state court are correct. 28 U.S.C. § 2254(e)(1). Accordingly, we adopt the

facts as set forth by the Illinois Appellate Court. *People v. Snyder*, No. 1-98-4535 (Ill. App. Ct. 2000). Following his trial, Snyder appealed his conviction, and the Office of the Public Defender filed a motion to withdraw as counsel. The Illinois Appellate Court granted counsel's motion to withdraw and affirmed Snyder's convictions and sentences. *People v. Snyder*, No. 1-97-2297 (Ill. App. Ct. 1998). Snyder did not file a petition for leave to appeal to the Illinois Supreme Court.

On August 28, 1998, Snyder filed a *pro se* petition for post-conviction relief. (R. 11, Answer to Habeas Pet., Ex. B, Post-Conviction Pet.) He alleged that at the time of his trial and his sentencing, he was ingesting three psychotropic medications (Elavil, Sinequan and Prozac), and, thus, he was unfit to stand trial. (*Id.* at 2.) Additionally, Snyder alleged that, during various meetings with his attorney, he communicated that he was "unable to concentrate on/or recall the events of the alleged crime." (*Id.* at 3.) On October 23, 1998, the trial court dismissed Snyder's petition as frivolous and patently without merit for lack of supporting documentation.[1] (*Id.*, Ex. C, Order Den. Post-Conviction Pet. at 5.)

Snyder appealed the trial court's dismissal of his post-conviction petition. He contended that: (1) he only had to allege, not necessarily prove, that he was ingesting psychotropic medications at the time of trial; and (2) he properly alleged an ineffective assistance of counsel claim. (*Id.*, Ex. D, Pet'r's. Br. on Appeal at 6.) The Illinois Appellate Court affirmed the dismissal of Snyder's post-conviction petition. (*Id.*, Ex. G, Appellate Order Den. Post-

---

[1] The trial court held that Snyder failed to prove that he was actually taking psychotropic medications at the time of his trial. (R. 11, Answer to Habeas Pet., Ex. C, Order Den. Post-Conviction Pet. at 4.) Rather, the court concluded that the documentation submitted by Snyder merely indicated his *attempts* to gather this kind of evidence. (*Id.*)

2

Conviction Pet. at 6.) Snyder filed a petition for rehearing, which was subsequently denied. (*Id.*, Ex. I, Order Den. Reh'g.)

On February 16, 2001, Snyder filed a petition for leave to appeal to the Illinois Supreme Court. (*Id.*, Ex. J, Pet. for Leave to Appeal.) Snyder argued that where a petitioner alleges that he notified his attorney of his difficulty concentrating and also alleges the ingestion of three psychotropic medications, he sufficiently shows a constitutional violation. (*Id.* at 6.) Snyder's petition further contended that the Illinois Supreme Court should clarify its holding in *People v. Mitchell*, 727 N.E.2d 254, 266-67 (2000) (holding that a defendant's ingestion of psychotropic medication, without more, does not give rise to a *bona fide* doubt of the defendant's fitness requiring the trial court to order a fitness hearing). Snyder urged the Illinois Supreme Court to hold that although a defendant's ingestion of psychotropic medications does not entitle that defendant to a fitness hearing, it is not irrelevant to the determination of whether that defendant should receive a fitness hearing. (*Id.* at 3.) On April 4, 2001, the Illinois Supreme Court denied Snyder's petition for leave to appeal. (*Id.*, Ex. K, Order Den. Pet. for Leave to Appeal.)

On September 15, 2001, Snyder filed the instant *pro se* petition for a writ of habeas corpus. Snyder now claims that: (1) his Sixth Amendment rights were violated when he stood trial while unfit due to his ingestion of psychotropic medications; and (2) he was denied his Sixth Amendment right to effective assistance of counsel where counsel knew that Snyder was medicated, was told by Snyder that he could not understand what was happening in court, and counsel failed to request a fitness hearing or advise the court of his mental status. (R. 1-1, Habeas Pet. at 5.)

3

## HABEAS CORPUS STANDARDS

Federal courts may grant a writ of habeas corpus when a person is held in custody under a state court judgment in violation of the United States Constitution. 28 U.S.C. § 2254. Before a federal court will consider a petition for a writ of habeas corpus on its merit, however, the petitioner must: (1) exhaust all remedies available in state courts, 28 U.S.C. § 2254(b)(1)(A); and (2) fairly present any federal claims to the state courts first, or risk procedural default, *Picard v. Connor*, 404 U.S. 270, 275 (1971); *Verdin v. O'Leary*, 972 F.2d 1467, 1472-73 (7th Cir. 1992). This exhaustion requirement is "grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of state prisoner's federal rights." *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). Notwithstanding a procedural default, habeas review may still be available if the petitioner can show cause for the default and actual prejudice, or demonstrate that a failure to consider the claim will result in a fundamental miscarriage of justice. *Id.* at 750.

The standard of review for claims that survive the exhaustion and procedural default analysis is strict. Under the Antiterrorism and Effective Death Penalty Act of 1996, Snyder cannot obtain habeas relief unless he establishes that the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). In other words, this Court will not evaluate Snyder's claim *de novo*. Rather, we analyze whether the Illinois Appellate Court's decision reasonably applied Supreme Court precedent to the facts of Snyder's case. A state court has reasonably

applied Supreme Court case law if its application is "at least minimally consistent with the facts and circumstances of the case." *Spreitzer v. Peters,* 114 F.3d 1435, 1442 (7th Cir. 1997). Under this limited analysis, the state court's decision must stand "if it is one of several equally plausible outcomes." *Hall v. Washington,* 106 F.3d 742, 748-49 (7th Cir. 1997).

## ANALYSIS

### I. Procedural Default

Respondent concedes that Snyder has exhausted his state remedies. (R. 10, Answer to Habeas Pet. at 4.) Respondent contends, however, that Snyder failed to fairly present his claims in state court. Snyder did not raise any argument regarding procedural default in his petition to this Court.

A habeas petitioner must provide the state courts with a fair opportunity to apply constitutional principles and correct any constitutional error committed by the trial court. *United States ex rel. Sullivan v. Fairman,* 731 F.2d 450, 453 (7th Cir. 1984). To this end, a petitioner must present his claims "in such a way as to fairly alert the state court to any applicable [federal] constitutional grounds for the claim." *Green v. Peters,* 36 F.3d 602, 605 (7th Cir. 1994) (citations and quotations omitted). This means that both the operative facts and the controlling legal principles of a constitutional claim must be submitted to the state courts. *Verdin,* 972 F.2d at 1474 (citing *Picard,* 404 U.S. at 277).

To determine whether a habeas petitioner has fairly presented a federal claim in state court, we follow the framework articulated in *Verdin*. Petitioner's argument to the state court must: (1) rely on pertinent federal cases employing constitutional analysis; (2) rely on state cases applying constitutional analysis to a similar factual situation; (3) assert the claim in terms so

5

particular as to call to mind a specific constitutional right; or (4) allege a pattern of facts that is well within the mainstream of constitutional litigation. *Verdin,* 972 F.2d at 1474 (citations omitted). If the petitioner does not abide by these criteria, this Court will not engage in a review of his claims because the state courts did not have a fair opportunity to consider them. However, the presence of any one of these factors, particularly factors one and two, does not automatically avoid a waiver; the Court must consider the specific facts of each case. *See id.*

### A. Snyder's Fitness Claim

Snyder's fitness claim is procedurally defaulted because he did not give the state courts a fair opportunity to remedy this alleged Sixth Amendment violation. This Court's careful review of the state court record establishes that Snyder did not fairly present his claim to the state courts because the legal basis for the claim varied throughout his briefs, and the state courts were not alerted to the constitutional nature of the claim.

In his petition for post-conviction relief, Snyder argued that his Fourteenth Amendment rights were violated by "the State's failure to disclose its administration of psychotropic medications." (R. 11, Answer to Habeas Pet., Ex. B, Post-Conviction Pet. at 2.) Snyder relied almost exclusively on state law to further this argument. His sole reference to federal law was *Drope v. Missouri,* 420 U.S. 162 (1975), which he cited to stand for the proposition that the Fourteenth Amendment requires that an accused who is entitled to a fitness hearing and denied one before being criminally prosecuted, must have his conviction reversed and remanded. By contrast, Snyder petitions this Court for habeas relief on the grounds that he stood trial while unfit due to his ingestion of psychotropic medications, in violation of the Sixth Amendment.

6

Thus, Snyder did not cite to *Drope* to illustrate the same "controlling legal principle" that he submitted to this Court. As a result of the means by which Snyder pursued his fitness claim, the trial court that denied his post-conviction petition was not alerted to any Sixth Amendment constitutional violation concerning Snyder's fitness to stand trial. Rather, the trial court ruled on his petition with reference only to state law. (R. 11, Answer to Habeas Pet., Ex. C, Order Den. Post-Conviction Pet. at 3.)

In his appeal of the trial court's order denying post-conviction relief, Snyder again failed to cite to federal case law; rather, he relied exclusively on state law. (*Id.*, Ex. D, Pet'r's Br. on Appeal at 6.) Snyder argued that "the trial court erred in summarily dismissing the *pro se* petition on the grounds that Snyder merely alleged – and did not prove – that he was taking psychotropic drugs." (*Id.*) The substance of Snyder's argument on appeal – that the trial court erred in dismissing his petition for lack of supporting documentation – focused on an Illinois statute (735 ILCS 5/104-21). This argument does not constitute a pattern of facts within the mainstream of constitutional litigation, because nowhere did Snyder mention the Sixth Amendment or any other catch-phrase of constitutional litigation.

In his reply to the State's brief on appeal, Snyder again failed to cite to the Sixth Amendment in reference to his fitness claim. (*Id.*, Ex. F, Pet'r's Reply Br. at 2.) Instead, Snyder asked the Illinois Appellate Court for either: (1) a reconsideration of his post-conviction claim in light of the medical records; or, alternatively (2) the appointment of counsel and further post-conviction proceedings. (*Id.*) Snyder cited only to Illinois law, and his argument focused on whether the medical records submitted by Snyder verified his post-conviction claims that he was suffering from mental illness and being treated with multiple psychotropic medications during

7

his trial. (*Id.* at 3.) In surveying Snyder's briefs, the Illinois Appellate Court was not alerted to a Sixth Amendment fitness claim. Rather, the court interpreted Snyder's fitness arguments as relying on his Fourteenth Amendment right to due process. (*Id.*, Ex. G, Appellate Order Den. Post-Conviction Pet. at 3.) In analyzing Snyder's fitness arguments, the court cited to Illinois cases and Illinois statutes. (*Id.* at 4.)

In Snyder's petition for leave to appeal to the Illinois Supreme Court, he again failed to cite to any federal law and essentially asked the court to clarify its holding in *Mitchell*, 727 N.E.2d at 266-67. (*Id.*, Ex. J, Pet. for Leave to Appeal at 3.) In presenting his argument to the court, Snyder did not assert a claim in terms so particular as to call to mind a specific constitutional right nor did Snyder allege a pattern of facts that is well within the mainstream of constitutional litigation. In light of our review of the state court record, this Court finds that Snyder's presentation of his fitness claim was insufficient to alert the Illinois Appellate Court or the Illinois Supreme Court to the constitutional components of his alleged Sixth Amendment claim. Accordingly, the claim is procedurally defaulted.[2]

## B. Snyder's Ineffective Assistance of Counsel Claim

Respondent also argues that Snyder failed to fairly present his ineffective assistance of counsel claim to the state courts. This Court disagrees. Although Snyder did not cite any federal cases in his petition for post-conviction relief, he clearly stated that his Sixth Amendment rights

---

[2] Snyder has failed to present evidence of any external cause that prevented him from raising his Sixth Amendment fitness claim before the Illinois courts. Moreover, he cannot establish the requisite prejudice. Finally, Snyder has not demonstrated that this case involved a fundamental miscarriage of justice. *See Coleman*, 501 U.S. at 750. Therefore, we see no reason to review Snyder's procedurally defaulted fitness claim.

were violated by trial counsel's failure to request a fitness hearing. (*Id.*, Ex. B, Post-Conviction Pet. at 2.) In his brief to the Illinois Appellate Court, Snyder framed his ineffective assistance of counsel argument in terms of Illinois law, most of which failed to address any constitutional issues. (*Id.*, Ex. D, Pet'r's Br. on Appeal.) However, this, in itself, will not defeat a finding of fair presentment if it is probable that the state court was alerted to the constitutional nature of his claim. *See Verdin*, 972 F.2d at 1475-76 (holding that "when the cited cases articulate only state law principles and available federal precedent has been omitted from the presentation . . . the habeas court must determine whether, as a *pragmatic* matter, it is probable that the state tribunal was alerted to the federal quality of the claim"). A pragmatic assessment of this claim leads us to conclude that Snyder effectively relayed to the Illinois Appellate Court the substance of his legal argument such that the court could have addressed the ineffective assistance of counsel claim in terms of federal law.

The Illinois Appellate Court order affirming the denial of Snyder's petition for post-conviction relief states that Snyder alleged that his Sixth Amendment rights were violated because his defense counsel failed to assert Snyder's statutory right to a fitness hearing. (R. 11, Answer to Habeas Pet., Ex. G, Appellate Order Den. Post-Conviction Pet. for at 3.) Further, the court cited the relevant Supreme Court case law, *Strickland v. Washington*, 466 U.S. 668 (1984), in analyzing Snyder's ineffective assistance of counsel claim. Moreover, in Snyder's petition for a rehearing, he alleged facts that call to mind the specific constitutional violation of ineffective assistance of counsel. In particular, he stated that while ingesting three psychotropic medications, he told his attorney that he was having difficulty recalling events and concentrating, and that the attorney failed to request a fitness hearing or advise the court of Snyder's mental

9

health status. (R. 11, Answer to Habeas Pet., Ex. H, Pet. for Reh'g at 1.)

In his petition for leave to appeal to the Illinois Supreme Court, Snyder's brief stated that he was "denied effective assistance of counsel when his attorney failed to request a fitness hearing." (*Id.*, Ex. J, Pet. for Leave to Appeal at 6.) Although Snyder all but once failed to include the constitutional buzzwords "Sixth Amendment" in his briefs, he otherwise peppered the briefs with catch-phrases that would tend to raise a constitutional red flag and would call to mind the Sixth Amendment's guarantee of effective assistance of counsel. In sum, we find that the operative facts and controlling legal principles were present in Snyder's briefs to the Illinois Appellate Court and the Illinois Supreme Court, such that he "assert[ed] the claim in terms so particular as to call to mind a specific constitutional right," thus satisfying the *Verdin* test. *See* 972 F.2d at 1474. Concluding that Snyder fairly presented his ineffective assistance of counsel claim to the Illinois state courts, we now turn to the merits of this claim.

## II. Merits of Snyder's Ineffective Assistance of Counsel Claim

Snyder argues that his trial attorney was constitutionally ineffective in failing to raise his entitlement to a fitness hearing. The Illinois Appellate Court addressed this claim and denied it on the merits. To establish that he was deprived of effective assistance of counsel, Snyder must demonstrate that: (1) counsel's representation fell below an objective standard of reasonableness (performance prong); and (2) there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different (prejudice prong). *Strickland,* 466 U.S. at 687. With regard to the performance prong, Snyder must identify the specific acts or omissions of counsel that form the basis for his claim of ineffective assistance of

10

counsel. *Id.* at 690. As to the prejudice prong of the inquiry, a "reasonable probability" of a different result means a "probability sufficient to undermine confidence in the outcome." *Id.* at 694. In examining counsel's performance, courts "indulge a strong presumption that the counsel's conduct falls within the wide range of reasonable professional assistance." *United States v. Messino*, 55 F.3d 1241, 1252 (7th Cir. 1995) (citations and quotations omitted).

Even assuming *arguendo* that Snyder was entitled to a hearing, "a fitness hearing is not an end in itself. . . . [T]he improper denial of a fitness hearing can be harmless under *Strickland*." *Eddmonds v. Peters*, 93 F.3d 1307, 1316-17 (7th Cir. 1996). We need not ask whether the court should have conducted a fitness hearing, but rather whether Snyder was fit to stand trial. *Id.* at 1317. Only if there was a reasonable probability that Snyder was not fit to stand trial, calling into question the integrity of the adversarial process, will "confidence in the outcome" of the trial be deemed undermined for the purposes of an ineffective assistance claim under *Strickland*. *See* 466 U.S. at 694.

Snyder has not come forth with clear and convincing evidence to rebut the state courts' factual determinations regarding his fitness to stand trial. 28 U.S.C. § 2254 (e)(1). Furthermore, the state courts cited the relevant Supreme Court law, *Strickland*, and reasonably applied it to the facts of Snyder's case. In rejecting Snyder's ineffective assistance of counsel claim, the Illinois Appellate Court correctly noted that only allegations not contradicted by the record must be taken as true. In its review of the trial court record, the Illinois Appellate Court found that Snyder responded appropriately during his trial and displayed no confusion in his exchanges with the trial court during his jury waiver or his trial. Snyder's trial testimony was in accord with the testimony of several prosecution witnesses, and he maintained and reiterated his story during

11

sentencing. In the best position to observe Snyder's behavior and demeanor at trial, the presiding trial judge specifically stated that "there was no *bona fide* doubt of the defendant's fitness to stand trial." (R. 11, Answer to Habeas Pet., Ex.G, Appellate Order Den. Post-Conviction Pet. at 5.) Moreover, the circuit judge who dismissed Snyder's *pro se* petition for post-conviction relief is the same judge who presided over Snyder's jury waiver, trial and sentencing.

As the record in this case belies the probability that Snyder was unfit to stand trial, he suffered no prejudice from his counsel's failure to request a fitness hearing. *See Eddmonds*, 93 F.3d at 1316-17. Absent such prejudice, this Court finds that Snyder has failed to establish his ineffective assistance of counsel claim. Accordingly, this claim is denied.

## CONCLUSION

For the reasons stated above, the Court denies Jimmy Lee Snyder's petition for a writ of habeas corpus. (R. 1-1.) The Clerk of the Court is instructed to enter final judgment, pursuant to Federal Rule of Civil Procedure 58, in favor of Respondent Sternes and against Petitioner Snyder.

ENTERED:

**Judge Ruben Castillo**
**United States District Court**

**Dated: April 26, 2002**